Lee, J.
By the Code of Virginia (ch. 157, § 2, *797 p. 616,) authority is given to the County courts to change from time to time, the days for the commencement of the terms thereof, all the justices of the county having been first summoned and a majority concurring in such change. The object of the provision requiring the summons is to give notice of the proposed change and to enable all the justices to be present and give their voices if they will, upon the question. If then without having been previously summoned, all the justices shall yet be actually present at the time a change is proposed and thus have the opportunity of being heard, and the requisite majority shall be found to concur in the measure, the object and spirit of the law will be fully satisfied and all questions as to the regularity or the fact of previous summons must be at an end and it will be in vain afterwards to say that the order is without effect because the justices had not been formally summoned previously to attend the court for the purpose of considering the subject. I think therefore there is nothing in the objection that the term at which the judgment occurred commenced upon a day not authorized by the law.
The other objection going to the constitution of the court at which the indictment against the plaintiff in error was found by the grand jury and of that at which the plea was entered is one of a much more serious and difficult character.
The constitution provides (art. 6, § 25,) that there shall be in each county of the commonwealth a county court which shall be held monthly by not less than three nor more than five justices except where the law shall require the presence of a greater number. By § 22 of the act passed April 22, 1852 (Sess. Acts p. 65,) it is provided that there shall be in each county in four of the months of. every year, a quarterly term of every county court, and in every other month a *798 monthly term thereof, to be held at the times and the jurisdiction, so far as consistent with the con- and that act, then prescribed by law. The section then proceeds to declare that the number ■ of justices necessary to constitute a court of oyer and terminer a court of examination and courts in all criminal prosecutions shall be the same as then prescribed by law: in all civil cases and in matters of county police and in all other cases, except criminal, the presiding justice and two other justices, or in the absence of the presiding justice any three justices, to constitute a court, except where more than four are necessary under the laws then in force. By the Code (ch. 212, § 2, p. 787,) a court of oyer and terminer must consist of five justices at the least, and an examining court (ch. 205, § 4, p. 765,) of the same number: and by the general county court law of the Code (ch. 157, § 1, p. 615,) it is declared that the County court in each county shall be held by the justices of the county or any four or more of them, except where otherwise expressly provided. So that at the passage of the act of April 22,1852, the number of justices necessary to constitute a court in a criminal prosecution other than cases for a court of oyer and terminer or of examination was four at the least. Does an indictment for an assault and battery or other misdemeanor constitute a criminal prosecution? Notwithstanding in some of the sections of the Code the term “criminal cases” may seem to be used in the sense of felonies only, in this there can be no doubt it is used to embrace both felonies and misdemeanors. The section itself refers to and recognizes the usual classification of causes inter partes, into civil and criminal cases, the latter of which embraces all prosecutions for offenses against the laws of whatever grade. And in the Code it will be seen, chapter 199 which is entitled “ General provisions concerning crimes and punishments” embraces alike mis *799 demeanors and felonies. The same is to be said of chapter 201, entitled “ For preventing the commission of crimes” and of chapter 211, entitled “General visions as to proceedings in criminal cases.” Indeed throughout the body of the criminal code commencing with title 54, headed “ Crimes and punishments” misdemeanors and felonies are alike contemplated as the ^subjects of criminal proceedings and by ch. 199, § 1, all offenses against the laws are declared to be the former or the latter. In § 22 the term “ criminal prosecution” is expressly used in a sense embracing all offenses of both classes. Its language is “In a criminal prosecution other than for perjury, &c.;” yet perjury with a single exception (when committed on a trial for felony) is but a misdemeanor. By § 37 of ch. 208, provision is made for the adjournment of questions of law in “acriminal case” to the General court; and it was never questioned that it embraced misdemeanors as well as felonies. And in ch. 210, § 11, provision is made where there is a conviction in a “criminal case” before a justice of the peace, which must be of course for a misdemeanor. Other sections will be found of similar import. And it will be observed this § 22 speaks of courts of oyer and terminer, courts of examination and courts in all criminal prosecutions : and as the county courts have no j urisdietion of felonies except as courts of oyer and terminer and of examination, to satisfy the terms employed, misdemeanors must be deemed to be intended.
It follows then that in a prosecution for a misdemeanor, the court to be legally constituted must consist of four justices at the least.
Nor is there any thing to restrict the necessity of the presence of four justices to the final trial of the cause. In many misdemeanors the court upon conviction, may, and in some, must impose corporal punishment by confinement in the county jail and in *800 others by stripes. In certain cases still further penalties are incurred. Such being the grave character of many misdemeanors, and moreover as no writ of error lies for the commonwealth except in prosecutions for breach of the revenue laws, it may be supposed it was' the purpose and policy of the law to secure in all criminal prosecutions the collective intelligence and information of four justices at least as affording a surer guaranty of a correct decision and the attainment of the ends of justice than that of a less number. And this reason would apply with equal force to other stages of the prosecution as to the final trial. For a case might be as effectually disposed of at a previous stage upon a motion to quash or a demurrer, or the tender of a plea, as at the trial before a jury. So upon the impanneling of a grand jury and in directing the subjects and the mode of its investigations and in receiving its presentments, important questions might arise upon which a party not yet charged with an offense would not be entitled to be heard. The reason and spirit of the law therefore would seem to require the presence of at least four justices when a grand jury is impanneled and the prosecution is commenced as well as upon the final trial of the case, whilst there is certainly nothing in its terms to render a less number sufficient. The language is “ courts in all criminal prosecutions shall be &c.” not “ courts for tile trial of criminal cases.”
I think therefore the objection that the record upon its face shows there were but three justices present when a grand jury was impanneled and when an indictment was found, is fatal under the law as it stands, and that the only remaining question is whether it has been waived in this case or the benefit of it otherwise lost to the party by his pleading to issue and failing to raise it until after a verdict against him. If the objection but imported some imperfection or defect of *801 form iu the indictment, or went merely to the qualification of the grand jurors or any one of them or any other matter of abatement it would be of course too late after verdict to attempt to raise it. But it is not of this character. It goes to the constitution of the court in which the prosecution was commenced by the finding of the indictment and in effect to the very fact of there being any indictment against the party. For if the court as constituted had no authority to impannel a grand jury and no jurisdiction either to commence or determine a prosecution by trial, the indictment must be of necessity a nullity. From its nature therefore it is an objection which is not waived by any pleading and which is not cured by any thing that afterwards transpired. In Cawood’s Case, 2 Va. Cas. 527, the clerk had omitted to record the fact of the finding of the indictment, which had however in fact been endorsed by the foreman “ a true bill” and presented in court with other bills. In the record of the proceedings had it was thus recited: “ Benjamin Cawood who stands indicted for murder, was led to the bar in custody &c. and thereof arraigned and yleaded not guilty to the indictment &c.” Another order spoke of the prisoner as “ accused of murder” and made provision for a jury “/or the trial” of the prisoner. An ineffectual trial was had and in the entry of the same the prisoner was spoken of again as standing indicted for murder. The jury having failed to agree, the prisoner petitioned for a change of venue which was granted. Yet held that the omission to record the finding of the indictment was fatal and could not be supplied by the paper itself nor the endorsement thereon nor by the subsequent recitals; and that the prisoner’s plea of not guilty or the subsequent proceedings did not cure the defect. I think the reason for not holding the defect to be cured in the present case is at least as strong as in the case just cited; and *802 regarding the objection as going to the foundation of the whole proceeding, the authority and jurisdiction of the court itself in which the prosecution was commenced, I think it was not and could not be cured by the subsequent proceedings and might be taken advantage of at any time either before verdict or after.
I am of opinion to reverse the judgment of the Circuit court and that of the County court and to render judgment for the plaintiff in error.
The other judges concurred in the opinion of Lee, J.
Judgment reversed.